IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
WILLIAM M. CHAIRES              :
                                :
                                :
     v.                         :   Civil Action No. CCB-02-1940
                                :
                                :
CHEVY CHASE BANK, F.S.B.        :
                                :
                                :
```

**MEMORANDUM**

The origins of the claim at issue in this bankruptcy appeal date back to 1980; the bankruptcy court thoroughly recited the facts and procedural history of this case in its March 8, 2001 order. (Order, 3/8/01, at 1-10).

In sum, appellee Chevy Chase Bank, F.S.B. ("Appellee" or "Chevy Chase") loaned $350,000 to appellant William M. Chaires ("Appellant" or "Chaires") and his wife, Laurie G. Chaires, in 1988, secured by a deed of trust on Chaires' property. (Id. at 3). In 1995, Chaires and his wife sued Chevy Chase in the Circuit Court for Prince George's County alleging eleven claims. (Id.). The jury returned a verdict for Chaires and his wife, finding that Chevy Chase violated the Secondary Mortgage Loan Law ("SMLL")[1] and the Maryland Consumer Debt Collection Act, and

---

[1] In 1980, Chaires' property was eroding into the Severn River, and the Maryland Department of Natural Resources ("DNR") contacted Chaires about the construction of a bulkhead to control the erosion problem. The DNR loaned Chaires the cost of constructing the bulkhead, secured by a statutory lien on the property. The Chaires' theory for the SMLL claim was that the "shore lien" was a first lien on the property, making the Chevy



breached the loan contract. (Id. at 4-6). Throughout the course of this litigation, this period has been termed "Stage I." (Appellant Br. at 3; Appellee Br. at 8).

Chevy Chase appealed the verdict, and the Court of Appeals of Maryland affirmed in part and reversed in part the circuit court's judgments. (Order, 3/8/01, at 5-6). The court reversed the judgment finding Chevy Chase liable for violations of the SMLL, but affirmed the following: (1) the judgment in favor of Laurie G. Chaires based on the Maryland Consumer Debt Collection Act; and (2) the judgment in favor of Chaires and his wife for breach of contract. (Id.; see also Chevy Chase Bank, FSB v. Chaires, 715 A.2d 199, 213 (Md. 1998)). The court also vacated and remanded to the circuit court the judgment for counsel fees in favor of Laurie G. Chaires; on remand, the circuit court entered a judgment in favor of Laurie G. Chaires in the amount of $12,993.75. (Order, 3/8/01, at 5-6). This phase has been called "Stage II." (Appellant Br. at 3; Appellee Br. at 8).

In 1997, Chaires, along with other parties, initiated a class action lawsuit against Chevy Chase in the Circuit Court for Prince George's County, alleging violations of the SMLL and Maryland's Credit Grantor Closed End Credit Provisions ("CECP"). (Order, 3/8/01, at 6; Appellant Br. at 3). The court granted

---

Chase loan a second mortgage regulated by the SMLL. (Order, 3/8/01, at 2-3).

Chevy Chase's motion for summary judgment on October 9, 1998. (Id.). This period has been described as "Stage III." (Appellant Br. at 3-4; Appellee Br. at 8).

Following the completion of the state court litigation, Chevy Chase advised Chaires and his wife that the mortgage was in arrears and that real estate taxes, insurance premiums, and attorneys' fees and costs advanced by Chevy Chase were due within thirty days. (Order, 3/8/01, at 6). Chevy Chase later initiated foreclosure proceedings in the Circuit Court for Anne Arundel County, but Chaires filed a petition for relief under the Bankruptcy Code one day before the scheduled sale. (Id. at 6-7). Chevy Chase filed a proof of claim in the bankruptcy case on March 29, 1999, seeking, inter alia, more than $300,000 in attorneys' fees and litigation costs arising out of Stages I, II, and III of the state court litigation. (Id. at 1).

On March 8, 2001, the bankruptcy court allowed Chevy Chase's claim in the amount of $106,615.56 for attorneys' fees and costs incurred during Stages I and III. (Id. at 28). The court also ordered that Chevy Chase's claim for Stage II fees and costs was denied in full, but "with leave to amend within 15 days" for Chevy Chase to provide a full accounting of all Stage II fees and costs "allocable to compensable issues, such as the Shore Lien and the SMLL." (Id.).

Chevy Chase filed a timely amendment on March 23, 2001, to

3

which Chaires filed an opposition on April 2, 2001. Unfortunately, as explained by the bankruptcy court, Chevy Chase's amendment "was filed by the Clerk as a claim, rather than being docketed as a pleading in the case file. Consequently, it was not forwarded to Chambers for consideration by the court until counsel brought it to the court's attention at a hearing on April 26, 2002." (Order, 5/1/02, at 1 n.1). On May 1, 2002, the bankruptcy court allowed Chevy Chase's claim for attorneys' fees and costs incurred during Stage II in the amount of $70,809.80. (Id. at 3).

On May 10, 2002, Chaires filed with the bankruptcy court a notice of appeal from all bankruptcy court orders allowing Chevy Chase's claims for attorneys' fees and costs.

I.   Timeliness of Chaires' Appeal

Both parties agree that this court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a), which states in relevant part: "The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees... and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C.A. § 158(a) (2002); (see also Appellant Br. at 1; Appellee Br. at 10). According to 28 U.S.C. §

158(c)(2), an "appeal under subsections (a) and (b) of this section shall be taken... in the time provided by Rule 8002 of the Bankruptcy Rules." 28 U.S.C.A. § 158(c)(2) (2002). Rule 8002 of the Federal Rules of Bankruptcy Procedure requires that the "notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." FED. R. BANKR. P. 8002(a).

As stated, the bankruptcy court allowed the claim for fees and costs from Stages I and III on March 8, 2001, and that from Stage II on May 1, 2002. Chaires filed a notice of appeal from all the orders on May 10, 2002 -- more than one year after the March 8, 2001 order. Accordingly, Chaires' notice of appeal is untimely with regard to the allowance of the claim for Stages I and III.[2] Because the notice of appeal was filed within ten days of the May 1, 2002 order, it is timely with respect to the allowance of the Stage II claim.

The "'ten-day filing mandate is strictly construed and requires strict compliance.'" In re Silver Oak Homes, Ltd., 169

---

[2] In his notice of appeal, Chaires seems to suggest that the bankruptcy court did not actually reach a "final resolution" of all the claims until its May 1, 2002 order. (See Notice of Appeal). Chaires' brief, however, properly indicates its appeal from the "Orders entered on March 8, 2001 and May 1, 2002." (See, e.g., Appellant Br. at 2). That the March 8, 2001 order was an appealable order under 28 U.S.C. § 158(a) is evidenced not only by its plain language (see Order, 3/8/01, at 28), but also by the fact that Chaires filed a motion to reconsider the order after its entry. (See Mot. for Recons. and Mot. to Revise J. Granting Chevy Chase, FSB Stage III Att'ys' Fees).

B.R. 349, 351 (D.Md. 1994) (quoting In re Herwit, 970 F.2d 709, 710 (10th Cir. 1992)). In the Silver Oak Homes case, because appellants' notice of appeal was filed thirteen days after entry of the bankruptcy court's order, the court ruled that it "[did] not have jurisdiction" over the appeal. 169 B.R. at 352; see also In re Herwit, 970 F.2d at 710 (holding that "failure to file a timely notice of appeal [is] a jurisdictional defect barring appellate review by the district court"). Accordingly, as Chaires' notice of appeal from the March 8, 2001 order was not timely,[3] this court does not have jurisdiction over those portions of the appeal pertaining to the allowance of claim from Stages I and III in the amount of $106,615.56.

---

[3] In his notice of appeal, Chaires also indicated his appeal from the bankruptcy court's April 5, 2001 order denying his Motion for Re-Consideration and Motion to Revise Judgment Granting Chevy Chase, FSB Stage III Attorneys' Fees. (See Notice of Appeal). Chaires filed his motion for reconsideration on March 30, 2001, twenty-two days after entry of the March 8, 2001 order appealed from. The bankruptcy court analyzed Chaires' motion under Rule 60 of the Federal Rules of Civil Procedure, made applicable to the proceeding by Rule 9024 of the Federal Rules of Bankruptcy Procedure. (Order, 4/5/01, at 2). Because Chaires did not file his motion for relief under Rule 9024 within ten days after the entry of judgment appealed from, Rule 8002(b) of the Federal Rules of Bankruptcy Procedure, which extends the time for filing a notice of appeal, is inapplicable. See FED. R. BANKR. P. 8002(b). Rule 8002(b) is also inapplicable because Chaires did not file his notice of appeal within ten days of April 5, 2001, the date of the entry of judgment resolving that motion. Id. Accordingly, Chaires May 10, 2002 notice of appeal from the April 5, 2001 order is not timely under Rule 8002(a) or 8002(b).

II. Stage II

A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. See FED. R. BANKR. P. 8013;[4] In re Stanley, 66 F.3d 664, 667 (4th Cir. 1995); In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992); Tidewater Fin. Co. v. Henson, 272 B.R. 135, 138 (D.Md. 2001); Binswanger Cos. v. Merry-Go-Round Enter., Inc., 258 B.R. 608, 611 (D.Md. 2001), aff'd, 2001 WL 1555314 (4th Cir. Dec. 6, 2001).

Chaires makes the following three arguments on appeal with respect to the May 1, 2002 order allowing the Stage II claim for fees and costs: (1) the bankruptcy proceedings excluded a "necessary and indispensable party;" (2) the deed of trust does not support allowance of the claim; and (3) there is no sufficient evidence of the amount of compensable fees and costs. (Appellant's Br. at 6-26).

A. "Necessary and indispensable party"

Chaires contends that his wife, Laurie G. Chaires,[5] was a

---

[4] The Rule provides, in relevant part: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." FED. R. BANKR. P. 8013.

[5] Chaires also briefly asserts that the "Queenstown Bank of Maryland, which holds a secured line of credit against the Property junior to that of Chevy Chase, was also a necessary and indispensable party." (Appellant's Br. at 8). The analysis with respect to Laurie G. Chaires applies in equal force to Queenstown

7

"necessary and indispensable party" to the bankruptcy case pursuant to Rule 19(a) of the Federal Rules of Civil Procedure.[6] (Id. at 6-8). In essence, Chaires maintains that since any fees or expenses covered by paragraph 7 of the deed of trust becomes additional debt secured by the property (see, infra, at II(B)), Laurie G. Chaires, as tenant by the entirety, had an interest in the subject matter of the bankruptcy case. (Appellant's Br. at 6-8).

Significantly, Chaires raises this argument for the first time on appeal. (Appellee's Br. at 12 (internal citations omitted); Appellant's Br. at 6). Rule 12(h)(2) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, states that "a defense of failure to join a party indispensable under Rule 19... may be made in any pleading

---

Bank.

[6] Rule 19 of the Federal Rules of Civil Procedure is made applicable to "adversary proceedings" in bankruptcy cases by Rule 7019 of the Federal Rules of Bankruptcy Procedure. FED. R. BANKR. P. 7019. An objection to the allowance of a claim, by itself, is not an adversary proceeding. See FED. R. BANKR. P. 3007. Rather, "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Id.; see also FED. R. BANKR. P. 7001. Chaires never alleged that this appeal arises from an adversary proceeding. (See Appellant's Br. at 6-8; see also Appellee's Br. at 13 n.8). Accordingly, it appears that Chaires' Rule 19 defense is misplaced and irrelevant for purposes of this appeal. The court, nevertheless, will proceed to its conclusion that the defense is untimely.

8

permitted or ordered under Rule 7(a), or by motion for judgment or the pleadings, or at the trial on the merits." FED. R. CIV. P. 12(h)(2); see also FED. R. BANKR. P. 7012(b). The Fourth Circuit, in Eberhardt v. Integrated Design & Constr., Inc., 167 F.3d 861, 870-71 (4th Cir. 1999), held that, pursuant to Rule 12(h)(2), "there is no authority for such a motion to be brought after trial... the defense is waived after the completion of a trial on the merits."

As recited herein, the bankruptcy court reached a decision on the merits concerning the allowance of claims for fees and costs from Stages I, II, and III on March 8, 2001 and May 1, 2002. It was, therefore, untimely to raise a Rule 19 defense for the first time after these dates.

B. Deed of trust

Paragraph 7 of the deed of trust signed by Chaires in 1988 provides in pertinent part:

---

[7] This court also notes that Chaires does not make any specific allegations or cite any case law to show that the disposition of the present action in his wife's absence would "impair or impede [her] ability to protect [her] interest." FED. R. CIV. P. 19. See, e.g., In re Ballard, 65 F.3d 367, 371 (4th Cir. 1995) (noting that the bankruptcy estate includes only the debtor's interest in a tenancy by the entirety); In re Cleveland, 53 B.R. 814, 821 (Bankr. E.D.Va. 1985) (finding that joinder is not required in a bankruptcy proceeding when the non-debtor spouse's interest in a tenancy by the entirety is fully protected by an existing party, the debtor spouse).

> Protection of Lender's Rights in the Property: Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.
>
> Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.

(Pre-Hr'g Mem. with Respect to Debtor's Objection to Allowance of Claim of Chevy Chase Bank, F.S.B., Ex. 1, Deed of Trust).

Chaires contends that the deed of trust does not support an award of attorneys' fees and costs because paragraph 7 should be interpreted narrowly. (Appellant's Br. at 8-13). Specifically, Chaires asserts that Stage II was not a legal proceeding that significantly affected Chevy Chase's rights in the property. (Id.).

The bankruptcy court reviewed this argument on numerous occasions. Chaires first asserted that Chevy Chase is not entitled to attorneys' fees and costs under the deed of trust pursuant to its June 2, 2000 motion for partial summary judgment, opposition to which was filed by Chevy Chase on June 22, 2000. (See Mem. in Supp. of Debtor's Mot. for Partial Summ. J. with

Respect to Debtor's Objection to Allowance of Claim of Chevy Chase Bank, F.S.B. at 7-9; Mem. of Law in Supp. of Chevy Chase Bank, F.S.B.'s Opp. to the Mot. for Partial Summ. J. with Respect to Debtor's Objection to Allowance of Claim of Chevy Chase Bank, F.S.B. at 6-8). On July 10, 2000, the bankruptcy court denied Chaires' motion for partial summary judgment on this point, explaining that the loan documentation supports some "cognizable claims" for attorneys' fees and costs.[8] (Order, 7/10/00, at 2). In anticipation of a November 28, 2000 hearing, Chaires submitted a pre-hearing memorandum, again explicating his contractual argument. (Pre-Hr'g Mem. with Respect to Debtor's Objection to Allowance of Claim of Chevy Chase Bank, F.S.B. at 8-11).

At the November 28, 2000 hearing, the bankruptcy court ruled that the SMLL portion of the state court litigation did substantially affect Chevy Chase's rights in the property. (Hr'g Tr., 11/28/00, at 73-76). The court explained that the SMLL claim placed in issue the character, or priority, of Chevy Chase's lien right. (Id. at 73). Accordingly, the court held that fees and costs incurred in defending the SMLL claim are covered by paragraph 7 of the deed of trust and, hence, are

---

[8] Chevy Chase does not argue, and hence the court will not discuss, whether this basis for appeal is also time-barred. (See, supra, at I).

11

compensable.[9]  (Id. at 73-76).  Contrarily, the court stated that "[l]egal fees for defending a Consumer Protection Act case are not something needed to protect the value of the property or the lender's rights in the property... They don't fall within the scope of this paragraph at all." (Id. at 74-76). This court reviews the bankruptcy court's conclusions de novo.  See Auction & Estate Representatives, Inc. v. Ashton, 731 A.2d 441, 444-45 (Md. 1999) (holding that interpretation of a written contract is a question of law for the court under Maryland law).

A review of the Court of Appeals of Maryland ("Stage II") opinion is instructive.  The court explained that despite the existence of the shore lien (see, supra, at n.1), at the closing of the Chevy Chase loan in 1988, Chaires and his wife signed an affidavit stating that they had "'not given, conveyed, permitted, or contracted for... any lien upon the Property to secure a debt or loan except for'" the present loan.  715 A.2d at 208.  As such, Chevy Chase inventoried the loan "in accordance with its internal procedures for first mortgage loans."  Id. at 209.

When Chaires and his wife sued Chevy Chase in 1995, it

---

[9] Chevy Chase raised the issue of federal preemption as an affirmative defense to the SMLL claim.  (Amendment to Claim for Att'y's Fees and Costs Filed by Chevy Chase Bank, FSB at 8, 17; Reply of Chevy Chase Bank, F.S.B. to Debtor's Opp. to Amendment to Claim for Att'ys Fees and Cost at 2-3).  The bankruptcy court, therefore, also ruled that fees and costs incurred with respect to the federal preemption issue are compensable.  (Order, 5/1/02, at 2-3); see also 715 A.2d at 213.

asserted that the shore lien was a lien of prior encumbrance that enjoyed "'normal lien priority'" over the Chevy Chase loan. <u>Id.</u> at 204 (<u>quoting</u> Br. for [Chaires] at 15). As a second lien, Chaires contended, the Chevy Chase mortgage was subject to the restrictions of the SMLL, including, <u>inter alia</u>, prohibitions against the use of an adjustable interest rate, the imposition of late fees and other charges, and the practice of requiring certain payments to be made by certified check. <u>Id.</u> at 201; <u>see also</u> MD. CODE ANN., COM. LAW. II § 12-401 <u>et seq.</u> (2002). If a lender violates the SMLL, "'he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan.'" 715 A.2d at 201 (<u>citing</u> MD. CODE ANN., COM. LAW. II § 12-413 (2002)).

The jury from the circuit court found that the shore lien was a lien of prior encumbrance and that Chevy Chase violated various SMLL restrictions. <u>Id.</u> In accordance with section 12-413, the court declared that all of the payments made by Chaires, $277,000, would be applied against the loan principal. <u>Id.</u> at 202. The principal balance, therefore, was reduced to $73,000. <u>Id.</u> Chaires appealed the decision ("Stage II").[10]

---

[10] The Court of Appeals of Maryland held that the shore lien was, in fact, a lien of prior encumbrance, but Chaires was estopped from asserting that Chevy Chase violated the SMLL. 715 A.2d at 205, 207. The court explained that Chaires, a member of the Maryland bar, played many roles in the Chevy Chase loan transaction: "a borrower, ... settlement attorney for the lender; settlement attorney for himself and his wife; and agent for the

The foregoing recitation reveals that during Stages I and II, Chaires directly attacked the priority of Chevy Chase's lien right. The circuit court reduced the principal balance to $73,000 and subjected Chevy Chase to the numerous restrictions of the SMLL. Accordingly, it is clear that Stage II of the litigation dealing with the SMLL claim was a legal proceeding that significantly affected Chevy Chase's rights in the property. This court, therefore, agrees with the bankruptcy court's conclusion that fees and costs incurred in defending the SMLL portion of the state court litigation are covered by paragraph 7 of the deed of trust and, thus, are compensable.

C.  <u>Evidence of the amount of compensable fees and costs</u>

As stated, the bankruptcy court ruled that fees and costs related to Chevy Chase's efforts to protect its lien and priority are compensable, whereas those related to Chevy Chase's defense of the breach of contract and Maryland Consumer Debt Collection Act claims are not compensable. (Hr'g Tr., 11/28/00, at 73-76). In its May 1, 2002 order, the bankruptcy court held that Chevy Chase's March 23, 2001 amendment "fairly allocates the fees... for Stage II services between compensable issues and non-

---

title insurer." <u>Id.</u> at 208-09. As such, he "faced an actual and grave conflict of interests but failed to make the full disclosure required for the transaction to proceed in the fashion in which it was consummated." <u>Id.</u> at 207.

compensable issues vis-a-vis the Debtor." (Order, 5/1/02, at 1-2). In so holding, the court found that the billing sheets submitted with the amendment were sufficiently specific and detailed to assess the allocations adequately. (Id.). Chaires argues on appeal that Chevy Chase did not carry its burden to prove by a preponderance of the evidence which portions of the total fees and expenses from Stage II are compensable. (Appellant Br. at 13-23; see also Order, 3/8/01, at 10). This court reviews the bankruptcy court's findings under a clear error standard. See FED. R. BANKR. P. 8013.

By way of background, prior to the submission of the March 23, 2001 amendment, the bankruptcy court had reviewed hearing testimony, post-hearing affidavits, and fourteen exhibits in evaluating the Stage II claim. (Order, 3/8/01, at 15). Significantly, the court noted that the Maryland Court of Appeals opinion resolving the Stage II litigation "devoted most of its attention to shore lien issues for which Chevy Chase could recover attorney fees and costs." (Id. at 23) (emphasis in original); see also 715 A.2d 199. The bankruptcy court concluded that "it is clear that a major portion of Chevy Chase's Stage II fees and expenses relate to shore lien issues, and not to consumer protection issues." (Order, 3/8/01, at 23). In the absence of a specific allocation, however, the court concluded that any reduction of fees and costs for time devoted to non-

compensable issues "would simply be arbitrary." (Id. at 23-24). The court, therefore, denied the Stage II claim with leave to amend for Chevy Chase to identify which fees and expenses are allocable to compensable and non-compensable issues. (Id. at 28).

A review of the March 23, 2001 amendment reveals that, for the most part, the billing sheet entries itemized as compensable clearly pertain to defense of the SMLL claim. (See, e.g., Amendment to Claim for Att'y's Fees and Costs Filed by Chevy Chase Bank, FSB, Bill No. 8010 (6/17/97: "Meeting with [Department of Natural Resources]"; 7/14/97: "Telephone conference with Department of Natural Resources regarding listings for shore liens"); Bill No. 8114 (7/15/97: "Letter to Department of Natural Resources"); Bill No. 8558 (9/4/97: "Research shore liens in Anne Arundel County"); Bill No. 8867 (10/14/97: "Legal research regarding preemption update"); Bill No. 4406 (12/16/97: "Meet with S. Anenberg regarding Mr. Chaires and preemption"; 12/22/97: "Meet with D. Cynamon to review Chaires and Maryland law/preemption issues"). Chevy Chase excluded as non-compensable those billing entries that decidedly relate to consumer protection and contractual issues. (Id. at 5-20). Chevy Chase also excluded unclear billing entries and close calls. (See id. at 5 n.2, 6 n.3, 7 n.4, 10, 14-16, 20, 20 n.10). Accordingly, this court does not find clear error in the

bankruptcy court's judgment that the March 23, 2001 amendment fairly and specifically allocated the Stage II fees and costs between compensable and non-compensable issues. (See, Order, 5/1/02, at 1-3).

Chaires also asserts that the allowance of the Stage II claim was improper because the March 8, 2001 order granting leave to amend gave Chevy Chase "the opportunity to unilaterally submit additional billing fee evidence, and create additional legal argument."[11] (Appellant's Br. at 15, 17, 23). The bankruptcy court was well within its discretion to grant leave to Chevy Chase to amend its claim. See 11 U.S.C.A. § 105(a) (2002). In addition, Chevy Chase did not "unilaterally" present papers following the March 8, 2001 order; Chaires submitted a brief in opposition to Chevy Chase's Stage II amendment on April 2, 2001. (See Debtor's Opp. to Chevy Chase Amendment to Claim for Att'y's Fees and Costs).

---

[11] The bankruptcy court rejected this argument in its May 1, 2002 order. (Order, 5/1/02, at 2).

In light of the foregoing, the bankruptcy court's allowance of Chevy Chase's claim for Stage II fees and expenses incurred in defending the SMLL claim in the amount of $70,809.80 will be affirmed. A separate Order follows.

_Oct. 16, 2002_
Date

_/s/ Catherine C. Blake_
Catherine C. Blake
United States District Judge